the income of which $18,000 a year is paid to the bankrupt in weekly installments of $346.16. On May 31, 1904, W. & J. Sloane recovered a judgment against the bankrupt for $5,336.05 for necessaries. An execution was issued thereon on the same day, which has been returned wholly unsatisfied. On October 28, 1904, an order was obtained in the New York Supreme Court by which it was ordered that an execution issue against the income of the trust fund, as provided for in section 1391 of the Code of Civil Procedure, as amended by chapter 461, p. 1071, Laws 1903. Upon such order an execution was issued to the sheriff of New York county, commanding him to satisfy the judgment out of the income payable from the trustees, to an amount equal to 10 per cent. of such income. On the same day a petition in bankruptcy was filed against the alleged bankrupt and a receiver appointed.

The beneficiary of this trust fund has no estate in the income which can be seized upon execution. The trust vests the whole estate in law and in equity in the trustee, subject only to the execution of the trust. By the statutes of New York it is provided that in the case of certain trusts the surplus of the income beyond the sum which may be necessary for the education and support of the beneficiary shall be liable in equity to the claims of his creditors in the same manner as other personal property which cannot be reached by an execution at law. A trustee in bankruptcy may bring a suit to enforce such liability. In Re Baudouine, 3 Am. Bankr. Rep. 651, 656, 101 Fed. 574, 41 C. C. A. 318.

If an adjudication shall be had and a trustee in bankruptcy appointed, the trustee can bring such a suit. If such a suit should result successfully, I think that no one creditor should be permitted to obtain a preference by obtaining a lien on the fund within four months before the bankruptcy. It is claimed that this lien is analogous to a mechanic's lien, which has been held not to be a lien obtained through legal proceedings, within the meaning of section 67f of the bankrupt act of July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]. But I think that this lien is one obtained through legal proceedings, namely, by issuing the execution pursuant to the special order obtained.

My conclusion is that this motion should be denied, with leave to renew it if the trustee does not institute any proceedings to reach the trust fund for the benefit of creditors within 30 days after his appointment and qualification, or if he brings such proceedings and it is held in them that he is not entitled to recover.

---

VON BERNUTH v. UNITED STATES.

(Circuit Court, S. D. New York. December 12, 1904.)

No. 3,346.

1. CUSTOMS DUTIES—CLASSIFICATION—IMITATION SILK YARN—SIMILITUDE.
    Imitation silk yarn, which is made from cotton waste subjected to a chemical process, whereby it loses its identity as cotton, and which resembles silk yarn in quality, texture, and use, is held, by virtue of the similitude clause in section 7, Tariff Act July 24, 1897, c. 11, 30 Stat. 205

[U. S. Comp. St. 1901, p. 1693], to be dutiable at the rate applicable to silk yarn, under paragraph 385 of said act (chapter 11, § 1, Schedule L, 30 Stat. 185 [U. S. Comp. St. 1901, p. 1668]).

On Application for Review of a Decision of the Board of General Appraisers.

The decision in question (G. A. 5,257, T. D. 24,155) relates to an importation at the port of New York by Hardt von Bernuth & Co. The opinion filed by the Board of General Appraisers is as follows:

FISCHER, General Appraiser. The protest is against the assessment of duty at the rate of 30 per cent. ad valorem, under paragraph 385, Schedule L, § 1, c. 11, Act July 24, 1897, 30 Stat. 185 [U. S. Comp. St. 1901, p. 1668], on certain so-called artificial silk yarns. This assessment was made in accordance with the board's decisions (G. A. 4,939, T. D. 23,110, and G. A. 5,081, T. D. 23,528), where merchandise of the character here in question was held not to be dutiable as manufactures of pyroxylin, under paragraph 17, Schedule A, § 1, c. 11, Act July 24, 1897, 30 Stat. 152 [U. S. Comp. St. 1901, p. 1626], but dutiable at the rate here complained of, by virtue of the similitude clause; the board finding that the article was similar in quality, texture, and use to silk yarn. The importers now claim that the merchandise is more similar to cotton yarns, and is therefore dutiable as such under paragraph 302, Schedule I, § 1, c. 11, 30 Stat. 175 [U. S. Comp. St. 1901, p. 1655], by virtue of the similitude clause. The alternative claim is made that it is dutiable at the rate of 20 per cent. ad valorem under section 6, c. 11, 30 Stat. 205 [U. S. Comp. St. 1901, p. 1693], as a nonenumerated manufactured article.

At the hearing the importers introduced testimony to show that the yarns are made from cotton waste, that they require treatment in dyeing more nearly resembling the dyeing of cotton yarn than that of silk yarn, and that they are woven in the same manner as cotton yarns. It appears, however, from all the evidence in this case, and from the evidence in G. A. 4,939, which is made a part of this case, that all yarns of this character, whether made from silk waste or from cotton waste, are known as imitation silk, and that the fabric woven therefrom is known and sold as "nearsilk." It further appears that the yarns are produced by a process which is described in the letters patent covering the same and offered in evidence, as follows: "The process, which consists in dissolving cellulose, without decomposing the same, and causing the solution to flow in a thread or fiber like stream into a bath containing a precipitant of cellulose, whereby the latter is precipitated from its solution in a thread or fiber like form."

From this it follows that the merchandise as imported no longer consists of cotton, even though it may have been originally cotton waste, and not silk waste. Note Meyer v. Arthur, 91 U. S. 570, 23 L. Ed. 455. The contention that the yarns produced by the patented process are dyed and woven in a manner similar to such processes with regard to cotton yarns we do not consider as of weight; for this similarity, if in fact it exist, does not relate to material, quality, character, or use, which are the only points of similarity referred to in section 7, c. 11, 30 Stat. 205 [U. S. Comp. St. 1901, p. 1694]. The yarns are similar, however, to silk yarn (as was found in G. A. 4,939) in three of those characteristics, namely, quality, texture, and use, and are not similar to cotton yarns as to any of the characteristics named in section 7.

We therefore see no reason for modifying our ruling laid down in G. A. 4,939 and G. A. 5,081, and accordingly overrule the protest, and affirm the decision of the collector.

Frederick W. Brooks, for the importers.
Charles D. Baker, Asst. U. S. Atty.

Platt, District Judge. Judgment affirmed on the decision of the Board of General Appraisers.